62 N.J. Super. 103 (1960)
162 A.2d 306
WILLIAM C. KOPPEL, ET AL., PLAINTIFFS-RESPONDENTS,
v.
OLAF REALTY CORP., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 29, 1960.
Decided June 23, 1960.
*106 Before Judges CONFORD, FREUND and HANEMAN.
Mr. Nathan L. Jacobson argued the cause for defendant-appellant (Messrs. Ralph H. and Nathan L. Jacobson, attorneys).
Mr. Roland A. Winter argued the cause for plaintiffs-respondents (Messrs. Jacobson & Winter, attorneys; Mr. Sam Weiss, on the brief).
The opinion of the court was delivered by FREUND, J.A.D.
This is an action for specific performance of a written and duly recorded agreement for the sale of realty brought by the vendees in possession of the premises against the successor in title of the vendor. From a judgment of the Chancery Division, Union County, on the opinion of former Judge Scherer, 56 N.J. Super. 109 (1959), in favor of the plaintiffs, the defendant Olaf Realty Corp. (hereinafter "Olaf") appeals.
Although undisputed, the facts are complex, and this proceeding is the culmination of considerable litigation. Briefly, on September 30, 1954 the plaintiffs entered into a contract, duly recorded in the Union County Register's office on October 13, 1954, with Jardine Estates, Inc., the *107 former owner of the realty, whereby Jardine agreed to complete the construction of a certain dwelling then in course of construction, in accordance with specifications; to deliver possession to plaintiffs not later than December 1, 1954; and to convey title to the lands and building by warranty deed in consideration of the sum of $38,000 to be paid by plaintiffs. Upon execution of the contract, plaintiffs paid $1,500 and they agreed to pay $300 per month commencing December 1, 1954, to be applied toward payment of taxes, fire insurance premiums, interest at 5 per cent on the unpaid balance of the purchase price, and the remainder in reduction of the purchase price. It was also agreed that the plaintiffs might at any time make additional payments on account of the principal.
The contract did not specify a particular date for the delivery of the deed but rather provided a formula for the determination thereof, and we regard this as an essential factor in the resolution of this cause. This time was to be when the accumulated payments made by the plaintiffs  the deposit, monthly payments applied to reduction of the purchase price, and any additional payments  totaled $8,000. The pertinent language of the agreement reads:
"When the unpaid balance of the purchase price has been reduced to $30,000.00, the seller shall execute and deliver to the purchasers the conveyance of the real estate hereby sold in accordance with the terms hereof and the purchasers shall either obtain their own financing and pay to the seller the unpaid balance of $30,000.00 due on the purchase price * * * or the purchasers shall execute and deliver to the seller a purchase money bond and mortgage thereon for $30,000.00 payable in monthly installments of Two Hundred Dollars ($200.00) * * *"
and
"the said deed of warranty shall be delivered and received * * * when the unpaid balance of the purchase price has been reduced to $30,000 * * *."
A supplemental contract was entered into on December 30, 1954 but not recorded. It amended the earlier agreement by increasing the monthly payments under the bond and *108 mortgage from $200 to $300 per month; the seller undertook certain obligations concerning completion of the house; and it was further provided that the seller might, at any time until delivery of the deed, encumber the premises by mortgage or otherwise, "not in excess of $30,000" or use the contract as collateral security for a loan up to that amount. Otherwise there were no basic changes.
Thereafter plaintiffs took possession of the premises under the contract.
In December 1955 Jardine instituted suit in the Union County Court, Law Division, against the plaintiffs for possession of the premises, alleging a default by the plaintiffs. They counterclaimed for damages resulting from Jardine's failure to complete work required of it under the contract and for improper performance of work that had been done. In November 1956 a jury rendered a verdict of no cause of action on Jardine's complaint and awarded plaintiffs $10,000 on their counterclaim. On Jardine's appeal, the Supreme Court affirmed the dismissal of its complaint but directed a retrial of the counterclaim. Jardine Estates, Inc. v. Koppel, 24 N.J. 536 (1957). Upon the retrial, plaintiffs recovered a judgment against Jardine for $8,000, which was entered on January 23, 1958. No appeal was taken from this judgment nor did Jardine make any payment thereon. It is stated that Jardine is now insolvent.
At all times herein mentioned the premises were encumbered by a first mortgage held by a financial institution in the principal sum of $25,000 upon which monthly payments have continued to be made (apparently by Jardine and its successors in interest).
During the course of the litigation at law between Jardine and plaintiffs and before the trial, Jardine conveyed the premises to Camp, Inc., which delivered a second mortgage on the premises to Modern Funding Corporation for $12,500; Camp, Inc. on the same day reconveyed to Jardine; and at the same time Modern Funding Corporation assigned its second mortgage to Louis Margolis and Henrietta Margolis *109 (hereinafter "Margolis"). Later, on April 23, 1956 Jardine conveyed to Plaza Realty Company.
On June 15, 1956, less than five months after the execution of the second mortgage, Margolis instituted foreclosure proceedings, joining plaintiffs as parties defendant. Plaintiffs filed an answer asserting priority over the second mortgagees and that they were entitled to a monetary recoupment, setoff or abatement in such sum as might be determined to be due them in the litigation with Jardine. Margolis sought to strike this answer, but the motion was denied by Judge Sullivan and a judgment was entered in this foreclosure suit on November 1, 1956, dismissing the complaint against plaintiffs and debarring all other defendants. On the following day, November 2, 1956, the judgment hereinabove referred to was entered in the Union County Court, Law Division, in favor of plaintiffs and against Jardine for $10,000 on plaintiffs' counterclaim. On November 15, 1956 Margolis assigned the second mortgage being foreclosed to Olaf, the defendant herein. The assignment was not recorded because, according to an affidavit later filed by the president of the assignee corporation, "it was felt that by continuing the [foreclosure] action in the name of Louis Margolis and Henrietta Margolis it would expedite the conclusion of this matter and would not in any way affect the rights of any parties." At the sheriff's foreclosure sale Margolis bid in for a nominal sum and he assigned his bid to Olaf, to whom the deed was delivered on January 27, 1957. Olaf moved before the Union County Court, Law Division, to intervene in the suit between Jardine and plaintiffs and to vacate the $10,000 judgment recovered by plaintiffs on their counterclaim against Jardine but the court denied this application on February 28, 1957. In the supporting affidavit filed by this defendant, it was stated that "This contract was prior to the second mortgage" and that it "is acquiring this property subject to the rights of the parties under both the contract of sale and first mortgage." Accordingly, it is apparent that defendant had full knowledge *110 of plaintiffs' claim and their judgment against Jardine for $10,000 as damages for breach of the terms of contract of sale. As already noted, this judgment was set aside on appeal and at the retrial the verdict was $8,000, upon which judgment was entered on January 23, 1958.
The complaint in this suit for specific performance was filed on March 4, 1958 and a lis pendens on May 22, 1958. In and by this proceeding the plaintiffs seek to offset their judgment for $8,000 against Jardine, together with costs and interest, against the balance of the purchase price which they are obligated to pay under the contract. Admittedly, the monthly payments heretofore made by the plaintiffs under the contract and applied in reduction of the purchase price do not amount to $8,000; but if the offset of the judgment is allowed, the remaining balance of the purchase price would be under $30,000 and the time reached when, according to the contract terms, the deed should be delivered and title closed. The defendant denies that plaintiffs are entitled to this set-off and contends, among other things, that the action is barred by the provisions of R.S. 46:21-3 because the plaintiffs failed to commence suit for specific performance and file lis pendens within the statutory three months after the date fixed in the agreement for consummation. Their contention is that if plaintiffs are entitled to apply the $8,000 judgment as a credit against the contract purchase price, they became entitled to a deed on January 23, 1958, when the judgment was entered, and that the lis pendens had to be filed within three months after that date under the statute, or by April 23, 1958, which was not done.
In awarding judgment herein for the plaintiffs, the court determined that they were entitled to the offset as claimed and that the commencement of this suit and the filing of lis pendens were timely. We are wholly in accord with this result, but we arrive at the conclusion of timeliness in filing the lis pendens upon reasoning different from that of the trial court.
*111 The primary issue is whether the lis pendens was filed late under the requirements of R.S. 46:21-3. This provides that every "recorded agreement for the sale or purchase of real estate * * * shall be absolutely void as against subsequent * * * purchasers and mortgagees for value of such real estate, unless the vendee * * * shall commence an action for specific performance of such agreement * * * and shall file a notice of the pendency of such action in the office of the county recording officer * * * within three months after the date fixed in such agreement for its consummation * * *." We have seen that the agreement between the parties did not fix a specific date for consummation of title. No such date for the closing of title is mentioned. Under the terms of the contract the date for closing was flexible and variable, being contingent upon fulfillment of the condition that the balance of the purchase price be reduced to $30,000  in other words, when the plaintiffs had paid $8,000 on account of the purchase price in accordance with the terms of the agreement. In addition to the monthly payments of $300, plaintiffs had the right to make greater payments on account of the purchase price. It is evident, therefore, that the contract lacked a fixed date for closing but that such a date could be ascertained, that is "When the unpaid balance of the purchase price has been reduced to $30,000.00 * * *."
The parties do not argue that the statute does not apply to the situation here. They assume and the case was tried on the theory that the statute applied and we shall, for the purposes of this proceeding, also assume its applicability.
The time for the performance of an installment contract runs from the date that the agreement requires the purchaser to take title, and the three-month limitation for the commencement of an action for specific performance and the filing of lis pendens is computed from that date. Stack v. Sobocinski, 100 N.J. Eq. 414 (Ch. 1927).
The difference between the parties is in the beginning date for the measurement of the three-month period for the *112 commencement of the action and filing of lis pendens. The defendant argues that it is January 23, 1958 when the plaintiffs recovered the judgment for $8,000 against Jardine in the Union County Court; and if so, the action was commenced within time, the complaint having been filed on March 4, 1958. The lis pendens, however, which was not filed until May 22, 1958, beyond the three-month period, would not have been timely filed. Reade v. Leslie, 137 N.J. Eq. 343, 349-51 (Ch. 1945). On the other hand, the plaintiffs argue and the trial court found that the time "fixed in such agreement for its consummation" is 45 days after the entry of the judgment when the time for appeal therefrom expired, R.R. 1:3-1(b), this being the time when plaintiffs first had a vested right in said judgment, Hodgson v. Applegate, 31 N.J. 29, 43 (1959), and that therefore the filing of lis pendens was timely. Were it necessarily to be held that the judgment of January 23, 1958 automatically credited plaintiffs with $8,000 on the contract purchase price, we would not agree that the running of the three-month period for the commencement of an action for specific performance and the filing of lis pendens would be suspended until the lapse of 45 days after the entry of the judgment when the time for appeal expired, as plaintiffs argue and as the trial court found. It is true that a judgment is subject to attack during the time allowed for appeal and that the right to the judgment becomes vested when the time for appeal has expired in the sense that it is then free from assault. Hodgson v. Applegate, supra. However, a final judgment, unless stayed, is valid and effective for all purposes until reversed or modified by an appellate court. Therefore, the judgment for $8,000 in favor of plaintiffs against Jardine established the latter's debt and was effective as such from the date of its entry on January 23, 1958. Its effectiveness was not held in abeyance for the 45-day appeal period.
Notwithstanding the foregoing, however, we conclude that the lis pendens was filed in time. We do not consider that *113 the entry of the $8,000 judgment by the Union County Court automatically reduced the balance due on the contract below $30,000 and thereby constituted the date of its entry the date "fixed in [the] agreement for its consummation," within the meaning of the statute. The judgment arose because of Jardine's failure of performance of the provisions pertaining to the construction of the building contained in the contract for sale of the premises, but it was a general money judgment as though it had been recovered for some cause unrelated to the contract of sale. It did not ipso facto operate as a contract credit against the purchase price of the property. "The right of set-off is an exercisable right, and not a fixed or natural right conclusively established by the mere fact that each of the parties has a claim against the other; until the right is exercised, either party may do what he pleases with his property." 80 C.J.S., Set-Off and Counterclaim, § 3, p. 8 (1953); U.S. Bank & Trust Co. Case, 311 Pa. 320, 166 Atl. 871 (Sup. Ct. 1933).
For the judgment against Jardine to assume the quality of a set-off against the purchase price of the realty required an affirmative claim of set-off to be asserted by the plaintiffs. Indeed, the plaintiffs' exercise of the right to offset the $8,000 judgment against the purchase price of the realty was denied by defendant and is being disputed on this appeal. According to the contract, the deed was not to be delivered until the balance of the purchase price had been reduced to $30,000. It was not until that event occurred that there was a "date fixed in [the] agreement for its consummation." The earliest time that the plaintiffs had reduced the purchase price to $30,000 was when they tendered themselves ready, willing and able to pay the balance due on account of the purchase price, and, so far as the record discloses, there was no tender of the $8,000 judgment as a contract credit until the claim of offset was made in the present suit. Plaintiffs' bringing of this action, wherein it is asserted for the first time that they have the right to apply the $8,000 judgment against the purchase price, is thus the earliest *114 event that established a date for the consummation of the agreement. The judgment we are reviewing on this appeal gives validity to the offset, which speaks as of the time it was exercised.
The fact that the claim of offset was asserted in and by the complaint for specific performance and the right vindicated by the judgment thereupon, is mere coincidence attributable to the particular circumstances of this case. The filing of the complaint herein, which was the event establishing the date for consummation of the agreement, was on March 4, 1958. The lis pendens was filed on May 22, 1958, within the three-month period. There was no violation of R.S. 46:21-3.
We have thus far assumed that the date upon which plaintiffs sought to offset the $8,000 judgment was the date upon which the "unpaid balance of the purchase price has been reduced to $30,000." If this view were to be disagreed with and it were to be considered that the mere commencement of this action did not have the effect of reducing the purchase price to $30,000, it would in any event have to be held that the purchase price was reduced, and that the date for consummation arose, when the judgment below was entered, adjudicating for the first time the right of the plaintiffs to offset the $8,000 judgment. In this view, the statute would a fortiori not bar the claim since the institution of the suit and the filing of the lis pendens occurred even prior to the date upon which the three-month period would commence to run, i.e., on July 15, 1959 when the judgment below was entered.
Appellant's next two points argued may be treated and answered together. Defendant contends that the plaintiffs are not entitled to charge it with the judgment obtained against Jardine because the judgment does not bind it; and, that defendant is not estopped from asserting its position as a subsequent purchaser and denying its liability to the plaintiffs. Both points are without merit. Plaintiffs are not "charging" defendant with the Jardine judgment; *115 no personal liability is sought against defendant. Plaintiffs are claiming a credit against the purchase price payable under the contract in the amount of the judgment obtained against the vendor in the contract. The defendant was both assignee of the second mortgage and purchaser of the mortgaged premises under the foreclosure proceeding at the sheriff's sale. As assignee of the mortgagee, it took subject to all the equities and defenses existing against the assignor. Atwater v. Underhill, 22 N.J. Eq. 599, 606 (E. & A. 1872); Davenport v. O'Connell, 117 N.J. Eq. 454, 458 (Ch. 1935).
One who acquires title through foreclosure of a mortgage is regarded as the purchaser from the date of the mortgage, not from the date of the sheriff's deed, Boylan v. Loy Corp., 128 N.J. Eq. 460, 463 (Ch. 1941), affirmed 130 N.J. Eq. 203 (E. & A. 1941), and acquires only such right and title as the mortgagor had at the time of making the mortgage. Baker v. Shimp, 8 N.J. Misc. 521, 525 (Ch. 1930).
The plaintiffs had been made parties to the foreclosure action and in their answer asserted their claim and priority. The complaint was dismissed as against them and in an affidavit filed by defendant on its motion to vacate the Jardine judgment in the Union County Court, plaintiffs' priority was conceded. Moreover, plaintiffs being in possession of the property, the defendant was under a duty to make inquiry of their rights. Schnakenberg v. Gibraltar, 37 N.J. Super. 150, 157 (App. Div. 1955). Defendant, therefore, was chargeable with both actual and constructive knowledge of plaintiffs' rights and claims against the vendor under the contract. Accordingly, defendant as successor of and in privity with Jardine, the vendor, can be compelled specifically to perform the agreement by conveying the realty in the same manner and to the same extent as the vendor would have been compelled to convey had it retained the legal title. Cranwell v. Clinton Realty Co., 67 N.J. Eq. 540, 550 (Ch. 1904). Plaintiffs would have been entitled to specific performance against Jardine had it not conveyed. Storch v. Tepperman, 99 N.J. Eq. 48, 52 (Ch. 1926); *116 Jersey Estates Corp. v. Weintraub, 140 N.J. Eq. 216, 218 (Ch. 1947). Here, the judgment against Jardine establishes the extent of the abatement, and defendant is compelled specifically to perform upon the payment of the same consideration that Jardine would have been entitled to receive.
Defendant urges that plaintiffs are estopped from bringing this action for specific performance by their election to proceed against Jardine in law for damages. This contention is patently without merit. The judgment recovered by plaintiffs on their counterclaim against Jardine was based upon a breach of the agreement with respect to the construction of the building. Such an action was not inconsistent with, nor does it operate as a waiver of their right to compel specific performance of the agreement to convey title. The action and judgment merely established the fact of contract breach and the amount by which the purchase price could be abated. Longo v. Reilly, 35 N.J. Super. 405, 409, 410 (App. Div. 1955), certification denied 25 N.J. 45 (1957). It did not constitute an election between inconsistent remedies. Ganger v. Moffett, 8 N.J. 73 (1951).
Finally, defendant argues that any set-off should not reduce the balance due below $30,000. The basis for this contention is that, under the supplemental agreement between plaintiffs and Jardine, it was provided that Jardine had the privilege of encumbering the premises by mortgage or otherwise and to use the contract as collateral security for any loan or obligation which the seller might incur not in excess of $30,000. At the time this agreement was executed, the first mortgage was in the sum of $25,000 and this mortgage was a lien on the premises when the second mortgage, of which defendant became the assignee, was executed. From these facts defendant argues that plaintiffs cannot use their judgment against Jardine to bring their liability below $30,000 insofar as to give them priority against defendant. There are several complete answers to this contention. In the first place, plaintiffs were dismissed as parties to defendant's *117 foreclosure suit and the effect of this was to give plaintiffs complete priority over defendant's mortgage. And as the trial court said in its opinion:
"This [argument], of course, overlooks the obvious fact that if the title had remained in Jardine the plaintiffs would have been entitled to an offset against Jardine in whatever amount was necessary to make them whole, regardless of the $30,000 provision. Defendant is in the same position."
The judgment is affirmed.